**DAVIS v. BOSTON & MAINE R. R.***

No. 4392.

District Court, D. Massachusetts.

Dec. 7, 1936.

Edward F. McClennen and Jacob J. Kaplan, both of Boston, Mass., for George P. Davis.

Richard W. Hall, of Boston, Mass., for Boston & M. R. R.

Charles E. Wyzanski, Jr., of Washington, D. C. (Stanley Reed, Sol. Gen., of Washington, D. C., Robert H. Jackson, Asst. Atty. Gen., Sewall Key, Charles E. Wyzanski, Jr., J. P. Jackson, Arnold Raum, and F. A. LeSourd, Sp. Assts. to Atty. Gen., Charles A. Horsky, of Washington, D. C., Francis J. W. Ford, U. S. Atty, and Arthur L. Murray, Sp. Asst. to U. S. Atty.,

*Writ of certiorari denied 57 S. Ct. 316, 81 L. Ed. ——.

both of Boston, Mass., and Thomas H. Eliot, Gen. Counsel, Social Security Board, of Washington, D. C., on the brief), for the Government.

SWEENEY, District Judge.

This is a suit in equity in which the petitioner, a stockholder in the respondent railroad company, seeks to enjoin the respondent from making payment to the Massachusetts Unemployment Compensation Commission under a state act (St. 1935, c. 479), and to the United States Collector of Internal Revenue under Title IX of the Social Security Act (section 901 et seq. [42 U.S.C.A. § 1101 et seq.]), and seeks to have both enactments declared unconstitutional. The United States Commissioner of Internal Revenue, and the United States Collector of Internal Revenue for the District of Massachusetts have been allowed to intervene as parties defendant.

### Findings of Fact.

The petitioner is a stockholder of the respondent corporation, hereinafter referred to as the railroad. The railroad is engaged in the business of operating a railroad in New England, and during the years 1935 and 1936 has employed more than eight persons in employment made subject to tax by Title IX of the Social Security Act (section 901 et seq. [42 U.S.C.A. § 1101 et seq.]), and is an "employer" within the meaning of the act.

By section 901 of the act (42 U.S.C.A. § 1101), the railroad is required to pay an excise tax in accordance with the table of percentages set forth therein, with respect to "having individuals in * * * employ" for each calendar year after January 1, 1936. The first payment to be made under Title IX of the act is on January 31, 1937, and it is this payment and subsequent payments which the petitioner seeks to have the railroad enjoined from making. By stipulation all parties agree: " * * * that the only issue involved in this case either directly or indirectly is whether or not Title IX of Chapter 531 of August 14, 1935, 49 Stat. 620 is an Act of the Congress within its powers under the Constitution of the United States or is violative of the Fifth Amendment thereof, and the only way that that issue is raised is with respect to payments under that Title IX."

The stipulation above quoted was entered into after the government filed a motion to strike such portions of the petitioner's bill as related to Title VIII of the Social Security Act (section 801 et seq. [42 U.S.C.A. § 1001 et seq.]), and the Massachusetts Unemployment Compensation Law on the ground that jurisdiction in this court was lacking. The stipulation entered into has the effect of waiving these matters, and the jurisdictional question raised as to Title VIII and the Massachusetts Unemployment Compensation Law need not therefore be decided.

The respondents have not questioned the jurisdiction in this court over the present action as it relates to Title IX (42 U.S.C.A. § 1101 et seq.), and I am, for the purposes of the case, assuming that jurisdiction exists. Compare Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688, with Gully v. First National Bank in Meridian, 57 S.Ct. 96, 81 L.Ed. ——.

Section 901 of Title IX (42 U.S.C.A. § 1101) provides for the imposition on every employer of "an excise tax, with respect to having individuals in his employ." Section 902 (42 U.S.C.A. § 1102) provides that the taxpayer may credit against the tax imposed by section 901 the amount of contributions that it may have made to an unemployment fund under a state law to the extent of 90 per cent. of the tax against which it is credited.

The petitioner charges that Title IX is unconstitutional (1) in that the tax levied is not in fact an excise tax in character, although so named, but is a capricious confiscation, (2) that it is not uniform throughout the United States, and is capricious, (3) it is not to provide, and (4) is not to pay the debts or for the common defense or general welfare of the United States. I am assuming that by (3) and (4) above it is the sum total of the petitioner's contention that the act is unconstitutional, because (3) it is not to provide for the common defense and general welfare of the United States, and (4) it is not to pay the debts of the United States.

### Conclusions.

Section 8 of article 1 of the Constitution states that: "The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States."

The petitioner contends that it is beyond the power of Congress to lay and collect an excise tax "with respect to having individuals in * * * employ," and says that the word "excise," as used in the Constitution, is limited to the understanding of that word as it was comprehended at the time of the adoption of the Constitution, and would limit that understanding to the imposition of a tax on tangible property, usually articles of merchandise for current use, often described as commodities.

In Hylton v. United States, 3 Dall. 171, 174, 1 L.Ed. 556, it was stated that "A general power is given to congress, to lay and collect taxes, of every kind or nature, without any restraint, except only on exports; but two rules are prescribed for their government, namely, uniformity and apportionment. Three kinds of taxes, to wit, duties, imposts and excises by the first rule, and capitation, or other direct taxes, by the second rule."

In Brushaber v. Union Pacific Railroad Co., 240 U.S. 1, 36 S.Ct. 236, 240, 60 L.Ed. 493, L.R.A.1917D, 414, Ann.Cas.1917B, 713, Mr. Chief Justice White, commenting on Pollock v. Farmers' Loan & Trust Co., 157 U.S. 429, 15 S.Ct. 673, 680, 39 L.Ed. 759, stated: "It is to be observed, however, as long ago pointed out in Veazie Bank v. Fenno, 8 Wall. 533, 541, 19 L.Ed. 482, 485, that the requirements of apportionment as to one of the great classes and of uniformity as to the other class were not so much a limitation upon the complete and all-embracing authority to tax, but in their essence were simply regulations concerning the mode in which the plenary power was to be exerted."

In Pollock v. Farmers' Loan & Trust Company, supra, Mr. Chief Justice Fuller quoted the following from the opinion of Mr. Chief Justice Chase in the License Tax Cases, 72 U.S.(5 Wall.) 462, 18 L.Ed. 497: "It is true that the power of Congress to tax is a very extensive power. It is given in the Constitution, with only one exception and only two qualifications. Congress cannot tax exports, and it must impose direct taxes by the rule of apportionment, and indirect taxes by the rule of uniformity. Thus limited, and thus only, it reaches every subject, and may be exercised at discretion."

The act with which we are dealing purports to be nothing other than an excise tax, and purports to be guided by the limitation of uniformity. There is no conten-

tion by any one that it is a direct tax, and therefore subject to the limitation of apportionment.

In the past, many attacks upon the taxing power of Congress have been concerned with the character of the tax imposed, that is, whether a particular tax was a direct tax, and therefore subject to apportionment, or whether it was a duty, impost, or excise, and therefore subject to uniformity. In this case we are concerned only with the question whether the tax sought to be imposed is a valid exercise of the power of Congress to lay and collect the tax as an excise.

In Spreckels Sugar Refining Co. v. McClain, 192 U.S. 397, 24 S.Ct. 376, 380, 48 L.Ed. 496, in sustaining a special excise tax "in respect of the carrying on or doing the business of refining sugar," the court stated that "it must be assumed, for what it is worth, that Congress had no purpose to exceed its powers under the Constitution, but only to exercise the authority granted to it of laying and collecting excises."

The Supreme Court of the United States did not question the validity of a tax thus imposed upon the doing of business. It would seem to follow that a tax upon "having individuals in * * * employ" would not be open to the question whether the Congress has exceeded its powers in thus levying a tax.

The right to do business naturally presupposes the right to employ. The tax under Title IX (42 U.S.C.A. § 1101 et seq.) is all inclusive as to business with the exception of the exemptions specified in the act. If a particular industry, such as the sugar refining industry, can be made subject to a special excise tax measured by its annual gross receipts from such industry, it would seem to follow that a tax with respect to "having individuals in * * * employ" would be equally valid.

In the light of the many taxes which have been held valid as excises, I am of the opinion that the tax laid by Title IX of the Social Security Act (42 U.S.C.A. § 1101 et seq.) is valid as an excise. Some of these taxes are as follows: A tax on the use of carriages for the conveyance of persons (Hylton v. United States, 3 Dall. 171, 1 L.Ed. 556); a tax on the issuance of state bank notes (Veazie Bank v. Fenno, 8 Wall. 533, 19 L.Ed. 482); a tax on the selling of lottery tickets and liquor (License Tax Cases, 5 Wall. 462, 18 L.Ed. 497; South Carolina v. United States, 199

U.S. 437, 26 S.Ct. 110, 50 L.Ed. 261, 4 Ann.Cas. 737; Ohio v. Helvering, 292 U. S. 360, 54 S.Ct. 725, 78 L.Ed. 1464; United States v. Yuginovich, 256 U.S. 450, 41 S. Ct. 551, 65 L.Ed. 1043); a tax on articles "manufactured, sold, or removed for sale" (United States v. American Chicle Co., 256 U.S. 446, 41 S.Ct. 548, 65 L.Ed. 1041); a tax on manufactured tobacco having reference to its origin and intended use (Patton v. Brady, 184 U.S. 608, 22 S.Ct. 493, 46 L. Ed. 713); a tax on the sale or transfer of securities (Provost v. United States, 269 U.S. 443, 46 S.Ct. 152, 70 L.Ed. 352; Thomas v. United States, 192 U.S. 363, 24 S.Ct. 305, 48 L.Ed. 481; Treat v. White, 181 U.S. 264, 21 S.Ct. 611, 45 L.Ed. 853); a tax on sales at commodity exchanges (Nicol v. Ames, 173 U.S. 509, 19 S.Ct. 522, 43 L.Ed. 786); a tax on the manufacture and sale of Oleomargarine (McCray v. United States, 195 U.S. 27, 24 S.Ct. 769, 49 L.Ed. 78, 1 Ann.Cas. 561); a tax on successions or transfers at death (Scholey v. Rew, 23 Wall. 331, 23 L.Ed. 99; Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969; New York Trust Company v. Eisner, 256 U.S. 345, 41 S.Ct. 506, 65 L.Ed. 963, 16 A.L.R. 660); a tax on transfers inter vivos (Bromley v. McCaughn, 280 U.S. 124, 50 S.Ct. 46, 74 L.Ed. 226); and a tax on the use of foreign-built yachts (Billings v. United States, 232 U.S. 261, 34 S.Ct. 421, 58 L.Ed. 596).

Holding as I do that the tax imposed does not go beyond the authority of Congress to impose this tax as an excise, it follows that there is no confiscation as urged by the petitioner, unless the tax exceeds the limitations imposed by the Constitution.

As to the question of uniformity, the tax in question is laid upon every business throughout the United States without regard to geographical location or intrinsic value. There is no question raised that the tax imposed does not cover all industries of a similar nature wheresoever situated, but the petitioner argues (a) that the exemptions from the operation of the statute, and particularly points to agriculture, result in a geographical discrimination, (b) that the imposition is capricious and anti-uniform in that it compels a particular class to bear the brunt of providing general revenue for the United States, and (c) that it is capricious and anti-uniform in that section 902 (42 U.S.C.A. § 1102) operates to exempt a state which has an unemploy-ment act acceptable to the Social Security Board to the extent of 90 per cent. of the tax whereas it levies the full 100 per cent. tax upon a state which sees fit not to enact an unemployment law or enacts one which is not to the approval of the Social Security Board.

To comply with the uniformity required by the Constitution, it is not necessary that the tax imposed should fall with equal force on each citizen in the land. Uniformity merely calls for the operation of the statute or plan of tax in the same way wherever the subject of the tax may be found (Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969) and is concerned only with geographical uniformity. The statute under consideration does not exceed the limitation of uniformity by reason of the fact that certain citizens in the industrial East may be taxed to the exclusion of certain others in the agricultural Midwest. The act provides that wherever the parties to be taxed are found, the tax shall apply, unless they are within the exempted classes.

The petitioner's contention that the act is capricious and anti-uniform because of the class or group selected upon which to levy the tax is not tenable. If the power to levy an excise exists in Congress, it may be levied in such manner, and upon such persons, and in such mode as they direct. See Flint v. Stone Tracy Co., 220 U.S. 107, 159, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312, and cases there cited in the footnotes. The courts will not inquire into the reason of the Congress for selecting a particular subject for taxation to the exclusion of others if the Congress has the power to enact the legislation in question.

As to the question of lack of uniformity of payments as between states having a state unemployment act, and those not having such an act, the operation of this law is closely analogous to the estate tax law, and is disposed of in the decision of Florida v. Mellon, 273 U.S. 12, 47 S.Ct. 265, 71 L.Ed. 511.

The petitioner further alleges lack of uniformity by reason of capricious and arbitrary exemptions included in the act, and points to the fact, and submits figures to prove that only 47.4 per cent. of the employers of the United States are subject to the tax.

Section 907 (c) of the act (42 U.S.C.A. § 1107 (c) defines the meaning of "employment", and excepts from that term the following classes: Agricultural labor, private domestic servants, officers and crews of vessels, family services, services in behalf of the United States, services in behalf of a state, and certain charitable organizations.

These exemptions fall into classes that have been long recognized as proper classifications for exemption, and are consistent with the policies long followed by the Congress. These exemptions from the operation of the term "employment" are not capricious or arbitrary acts of Congress, but are founded upon policies long established in the law of the United States. See Flint v. Stone Tracy Co., 220 U.S. 107, 108, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312, affirmed in Brushaber v. Union Pacific R. R. Co., 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493, L.R.A.1917D, 414, Ann.Cas. 1917B, 713.

■ It is believed that the case of Flint v. Stone Tracy Co., supra, is also ample authority for the exemption of employers employing less than eight persons. In view of the above, it is my opinion that the excises laid, and to be collected under Title IX of the Social Security Act (42 U.S.C.A. § 1101 et seq.), are not invalid excises, nor invalid because of anti-uniformity, or because they are capricious and arbitrary.

■ The petitioner further contends that the act (3) is not to provide, and (4) is not to pay the debts or for the common defence or general welfare of the United States. Both of these contentions can be treated as one. The petitioner urges that the real intent of the act is to coerce the various states into enacting state unemployment acts which would be acceptable to the Social Security Board, and that indirectly it seeks to regulate the relationship of employer and employee, and that such action is not within the power of Congress. Analysis of the act plainly indicates that any regulation that is to be made of relations between employer and employee must be made by the state. The fact that the Social Security Board, established under the act, must approve the form of the state unemployment act does not operate as an assumption by the federal government of the right to regulate such relations, nor does a reasonable reading of the act lead to such a conclusion. That the federal government requires approval of the state act before the 90 per cent. deduction under section 902 (42 U.S.C.A. § 1102) would apply appears to be a provision which guarantees that the 90 per cent. credit to be applied against the federal tax would only be granted when a bona fide, workable, and well-grounded state unemployment act is adopted. It cannot be successfully maintained that where a state adopts such an act the federal government is not thereby relieved of some of the burdens of relief, and that the credit of 90 per cent. would not be justified. Neither can it be argued that a loosely drawn state enactment which in practical effect would not be one to relieve the hazards of unemployment would in any effect relieve the federal government of its burden of relief expenditures. The act is an act to relieve the burden of unemployment. It levies an excise tax in a manner designed to relieve that burden. The moneys to be raised under the tax go into the general funds of the United States. They are not earmarked, but are available as general funds for appropriation for relief or other purposes. If none of the sovereign states were to pass state unemployment acts acceptable under Title IX, the 100 per cent. tax would be levied. If, on the other hand, all the states pass acceptable legislation, there is still paid into the Federal Treasury 10 per cent. of that tax which is available for like purposes. In either event, huge sums of money are to be received into the general funds of the United States.

The act on its face plainly is for the purpose of raising revenue to go into the general funds of the United States. It is out of this general fund that any appropriations of Congress must be made for relief or other purposes. It is an act to provide for the general welfare of the United States.

I therefore rule that the tax imposed under Title IX of the Social Security Act (42 U.S.C.A. § 1101 et seq.) is a valid excise under the taxing powers imposed in Congress, that it does not exceed the limitation of uniformity, that it is to provide for the general welfare of the United States, and is therefore constitutional.

The prayer for the injunction is denied, and the bill is to be dismissed.