[S. F. No. 15671. In Bank.—June 29, 1936.]

COUNTY OF LOS ANGELES, Petitioner, v. RAY L. RILEY, as Controller, etc., et al., Respondents.

Everett W. Mattoon, County Counsel, and J. H. O'Connor, Assistant County Counsel, for Petitioner.

U. S. Webb, Attorney-General, and H. H. Linney, Deputy Attorney-General, for Respondents.

CURTIS, J.—The County of Los Angeles, by this proceeding in *mandamus*, seeks to compel the respondent state officials to transfer to the county certain funds collected under the terms of Statutes of 1935, page 1312, and now on deposit in the state treasury, to the credit of the Motor Vehicle License Fee Fund, as expressly provided in section 9 (c) of the above-mentioned act. Respondents have refused to make the transfer for the same reason set forth in *City of Los Angeles* v. *Riley*, S. F. No. 15672 (*ante*, p. 621 [59 Pac. (2d) 137]), this day decided. Return to the petition has been made by way of general demurrer. This case differs from *City of Los Angeles* v. *Riley*, *supra*, only in that it involves the validity of section 9 (c) of the act, instead of section 9 (b). The other points raised are decided adversely to respondents on the authority of the *City of Los Angeles* v. *Riley* case.

The problem presented in the present proceeding is somewhat different from that presented in the companion case this day decided. Section 9 (c) of the act, after appropriating 12½ per cent of 99 per cent of the amount collected by the state under the statute to the counties and cities and counties on a population basis, fails to place expressly any restriction thereon as to use. In other words, the statute fails to define expressly the purposes for which the counties must expend the moneys so allocated to them.

The constitutional provision here involved, article XI, section 12, quoted in full in the companion case, prohibits the legislature from taxing the cities or counties, or the inhabitants thereof for local purposes. It necessarily follows that the state cannot levy and collect a tax, which it has power to levy and collect for state purposes, and then appropriate a portion of the fund so collected to the cities or counties for purely local purposes. This would be to permit the

state to do indirectly what it is prohibited from doing directly and, furthermore, would constitute a gift of state moneys in violation of article IV, sections 22 and 31, of the Constitution. (*County of Sacramento* v. *Chambers,* 33 Cal. App. 142, 146 [164 Pac. 613].) However, the constitutional provision here involved does not prohibit the imposition of a tax by the state, and the appropriation of a portion or all of the sums collected thereunder to the cities and counties to be expended by them for state purposes, even though those purposes are such that they are also local in nature. This was exactly what was held in the City of Los Angeles case, *supra,* this day decided.

The only question we are here called upon to decide is whether, when the state levies and collects a general tax, and in the same act appropriates a portion to the counties, without express limitation as to its use, can the courts read into the General Appropriation Act, the limitation found in article XI, section 12, of the Constitution, so as to limit the expenditure by the county of those funds to state purposes? Unless the limitation can be read into the general terms of section 9 (c) of the act, we have no doubt that section would be unconstitutional. It is our opinion that when the general nature of counties is considered and weight is given to the proper rules of construction, we are bound to read this limitation into the statute, in order to sustain, if possible, the constitutionality of the act.

Counties are not municipal corporations, but are political subdivisions of the state for purposes of government. (*Hill* v. *Board of Supervisors,* 176 Cal. 84 [167 Pac. 514]; *Reclamation District* v. *Superior Court,* 171 Cal. 672 [154 Pac. 845].) With certain exceptions, the powers and functions of the counties have a direct and exclusive reference to the general policy of the state and are, in fact, but a branch of the general administration of that policy. (*County of Sacramento* v. *Chambers, supra; Singh* v. *Superior Court,* 44 Cal. App. 64 [185 Pac. 985].) Counties are vested by the state with a variety of powers, which the state itself may assume or resume and directly exercise. (*Reclamation District* v. *Superior Court, supra; County of San Mateo* v. *Coburn,* 130 Cal. 631 [63 Pac. 78, 621]; see, generally, 7 Cal. Jur. 387, sec. 3 et seq.) Counties perform many functions which are state functions, as distinguished

from purely local functions, and expend large sums of money in the performance of those functions. Just as in the case of the cities, the spheres of operation of the counties and state overlap, but to a much greater degree. If the legislature, in enacting section 9 (c), had expressly placed a limitation in the statute to the effect that the moneys appropriated to the counties should be expended only for certain state purposes, there can be no doubt at all that the section would be valid, even though the enumerated purposes could have been carried out with county funds. The appropriation of various amounts to counties from various funds for highway purposes is a typical illustration. (See, also, *Golden Gate Bridge etc. Dist.* v. *Felt*, 214 Cal. 308 [5 Pac. (2d) 585].)

Keeping the above discussion concerning the nature of counties in mind, we have in the instant case a statute general in its terms, appropriating money to counties from a fund collected by a general state tax already held to be valid, without expressly limiting its use. As already pointed out, the state could levy a general tax and appropriate the sums collected in whole or in part to the counties to assist them in performing their many state functions. The Constitution prohibits a tax for local purposes. Under such circumstances, may it not be presumed that the legislature had in mind in passing section 9 (c) the provisions of article VI, section 12? Must we not interpret the general provisions of section 9 (c) together with the limitations found in the Constitution? Must we not, in interpreting section 9 (c), read into it the limitations found in the constitutional provision? We think that the answer to these questions is clear. We are of the opinion that, properly interpreted, section 9 (c) appropriates the moneys therein mentioned to the counties, as limited by article XI, section 12, i. e., for state purposes.

This rule that the general terms of a statute are to be limited or construed with the limitations found in the Constitution is not without precedent. In *Wines* v. *Garrison*, 190 Cal. 650, 652 [214 Pac. 56, 26 A. L. R. 1302], it is stated:

"It is true in one sense that this is a question of statutory construction, but it is also true that every statute must be construed in the light of the constitutional restrictions upon the power of the legislature so that it is necessary to con-

sider those constitutional provisions in arriving at the proper interpretation of the statute.''

In the recent case of *County of Los Angeles* v. *Legg*, 5 Cal. (2d) 349 [55 Pac. (2d) 206], it is stated:

■ ''The Constitution and the statute are to be read together. If the terms of a statute are by fair and reasonable interpretation capable of a meaning consistent with the requirements of the Constitution, the statute will be given that meaning, rather than another in conflict with the Constitution.''

■ Under these rules of construction, it must be held that the limitations in the constitutional provision are to be read into the general terms of section 9 (c) and that, so interpreted, the section appropriates the money to counties for state purposes. If the county officers attempt to expend the money for local purposes, there are appropriate remedies available to restrain such action.

For the foregoing reasons, it is clear that the funds herein involved should be transferred to the counties and cities and counties of the state, as provided for in said statute.

Let a peremptory writ issue as prayed for.

Shenk, J., Waste, C. J., Seawell, J., Langdon, J., and Thompson, J., concurred.